IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MOHAMED BAKRI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:21-CV-2001-N |
| | § | |
| NAUTILUS INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

This Order addresses Defendant Nautilus Insurance Company's ("Nautilus") motion for summary judgment [10], motion for leave [13], and motion to exclude expert testimony [15]. For the reasons set forth below, the Court grants the motion for leave and denies the motion to exclude expert testimony. Further, the Court grants in part and denies in part the motion for summary judgment.

### I. THE INSURANCE DISPUTE

This case arises out of Plaintiff Mohamed Bakri's insurance claims for wind and hail damage. Bakri had an insurance policy with Nautilus that covered multiple of his properties[1] from December 10, 2019, to December 10, 2020 (the "Policy Period"). Pl.'s Original Pet. ¶ 7 [1-2]. Bakri alleges that a winter storm during the Policy Period caused significant damage to his properties. *Id*. at ¶ 9. After an investigation, Nautilus refused to cover the damage, claiming that it was merely cosmetic. Pl's App. Supp. Resp. Mot.

---

[1] Located in Lancaster and Carrollton, Texas. Pl.'s Original Pet. ¶ 7.

MEMORANDUM OPINION AND ORDER – PAGE 1

Summ. J. 332, 338 [12-3]. In addition, Nautilus determined that any impairment beyond cosmetic damage occurred before the Policy Period. *Id*.

In August 2021, Bakri brought suit in Texas state court alleging breach of contract, violations of Texas Insurance Code Chapters 541 and 542, breach of the duty of good faith and fair dealing, and violations of the Deceptive Trade Practices Act[2] ("DTPA"). Pl.'s Original Pet. ¶¶ 31–42. Nautilus subsequently removed the case to this Court. Notice of Removal [1]. Now, Nautilus seeks to exclude the testimony of Bakri's expert witness and moves for summary judgment on all claims.

## II. THE COURT GRANTS THE MOTION FOR LEAVE

The Court grants Nautilus's motion for leave to file its motion to exclude expert testimony. Federal Rule of Civil Procedure 6(b)(1)(A) provides district courts the discretion to grant extensions of time for good cause. FED. R. CIV. P. 6(b)(1)(A); *Doss v. Helpenstell*, 699 F. App'x 337, 339 (5th Cir. 2017). "An application for extension of time under Rule 6(b)(1)(A) normally will be granted in the absence of bad faith on the part of the party seeking relief or prejudice to the adverse party." 4B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1165 (4th ed. 2008).

Nautilus has shown good cause to challenge the testimony of Bakri's expert witness, Gary Johnson, after the deadline. The Scheduling Order required the parties to file challenges to expert witnesses by September 6, 2022. Scheduling Order 2 [8]. However, due to Johnson's availability, Nautilus could not complete his deposition until after the

---

[2] Codified at TEX. BUS. & COM. CODE § 17.40, *et seq*.

MEMORANDUM OPINION AND ORDER – PAGE 2

deadline, on September 27, 2022. Def.'s Br. Supp. Mot. Leave [14]. There is no evidence of bad faith in the scheduling issue and allowing the motion will not disrupt trial deadlines. Accordingly, the Court grants the motion for leave and will consider Nautilus's motion to exclude expert testimony below.

### III. THE COURT DENIES THE MOTION TO EXCLUDE EXPERT TESTIMONY

Nautilus argues that Johnson's testimony is inadmissible because (1) he is unqualified to testify on claims handling and (2) his opinions are unreliable and not supported by the facts. Def.'s Br. Supp. Mot. Exclude 1 [16]. Both arguments fail.

#### A. Legal Standard

Under Federal Rule of Evidence 702 a witness must be qualified as an expert by "knowledge, skill, experience, training, or education." FED. R. EVID. 702. A qualified expert may testify if the expert's specialized knowledge will aid the trier of fact and "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id*. District courts must determine that expert testimony "is not only relevant but reliable," and make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid" and "can be applied to the facts in issue." *Daubert v. Med. Dow Pharm.*, 509 U.S. 579, 589, 592–93 (1993); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) (making the *Daubert* principles applicable to all expert testimony). The focus, however, "must be solely on the principles and methodology, not on the conclusions that they generate." *Daubert*, 526 U.S. at 595.

MEMORANDUM OPINION AND ORDER – PAGE 3

District courts have broad discretion to determine the admissibility of expert testimony. *Sims v. Kia Motors of Am.*, 839 F. 3d 393, 400 (5th Cir. 2016). But the *Daubert* inquiry may not replace the adversarial system. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002). "[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 250 (citing *Daubert*, 526 U.S. at 596). Indeed, "while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits." *Pipitone*, 288 F.3d at 250.

### B. Johnson Is Qualified to Testify

Nautilus argues that Johnson is not qualified to testify on claims handling because he is not a lawyer or expert on bad faith causes of action. Def.'s Br. Supp. Mot. Exclude 7–8. But Johnson has sufficient knowledge, skill, and experience to testify as an expert on claims management. He has over twenty-five years of experience working as an adjuster for Pilot Catastrophe Services and has handled over 15,000 individual insurance claims. Pl.'s App. Supp. Resp. Mot. Exclude 10, 32 [18-3]. His testimony can therefore assist a jury in understanding the standards of proper claims management, and he can opine on whether Nautilus mishandled Bakri's claims. This testimony does not require legal expertise in bad faith causes of action.

Additionally, Johnson's report provides more than a mere application of law to facts. Indeed, he details where he believes Nautilus mishandled Bakri's claims. *See id*. at 15. The Court concludes that Johnson is qualified to testify as an expert witness.

### *C. Johnson's Opinions Are Reliable and Relevant*

Nautilus argues that Johnson's opinions are unreliable because he has not shown which facts he relies upon or how he reached his conclusion. Def.'s Br. Supp. Mot. Exclude 8. The Court disagrees. Johnson's report details which documents and reports he relies upon for his analysis. Pl.'s App. Supp. Resp. Mot. Exclude 11–13. And the report notes that he reached his conclusions using an "accepted industry standard methodology (Haag Engineering, Nelson Engineering and EFI Global Engineering) for recognizing damages to building structures." *Id*. at 10. Further, he provides specific incidents in which he believes Nautilus mishandled the investigation. *See, e.g.*, *id.* at 37 ("[A]djuster Elizabeth Sharlot's failure to investigate different sources for wind and hail damage during this policy period, Hail Strike shows 1.25-inch hail on 8/16/2020."). The Court concludes that the report shows sound methodology and the evidence relied upon is sufficiently related to the case.[3] Accordingly, the Court denies Nautilus's motion to exclude Johnson's testimony.

### IV. SUMMARY JUDGMENT STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(A); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable

---

[3] Nautilus also argues that the report is unreliable because it is missing key facts and analysis. But the Court finds that the report reaches the minimum threshold of accuracy to be admissible. Nautilus's arguments, however, are relevant regarding the testimony's weight at trial. *See Pipitone*, 288 F.3d at 250.

MEMORANDUM OPINION AND ORDER – PAGE 5

inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, he "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in [his] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to judgment by either (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made the required showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact such that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

## V. THE COURT DENIES SUMMARY JUDGMENT ON THE BREACH OF CONTRACT CLAIM

Under Texas law, plaintiffs must prove the following elements to prevail on a breach of contract claim: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Am. Gen. Life Ins. Co. v. Kirsch*, 378 F. App'x 379, 383 (5th Cir. 2010). In insurance cases, a plaintiff must prove that his damages are covered under the policy. *Employers Casualty Co. v. Block*, 744 S.W.2d 940, 944 (Tex. 1988). In this case, Nautilus contends only that Bakri lacks evidence showing his property damages were caused by a covered cause of loss under the insurance policy. Def.'s Br. Supp. Mot. Summ. J. ("MSJ Br.") 17 [11]. The Court disagrees.

Bakri has provided sufficient evidence showing that his property damage resulted from a covered cause of loss. The policy provided that Nautilus would cover "direct physical loss unless the loss is excluded or limited in this policy." Def.'s App. Supp. Mot. Summ. J. 71 [11-2]. Wind and hail damage were not listed as an exclusion, and Nautilus has not asserted that these causes were excluded. *Id.* at 72. Further, Bakri has provided evidence that wind and hail caused the property damage. One of Bakri's designated experts, engineer Neil B. Hall, provided a report stating that the damage was caused by a storm that occurred within the Policy Period, on August 16, 2020. Pl.'s App. Supp. Resp. Mot. Summ. J. 4–5 [12-2].

Defendant contends that the policy does not cover cosmetic damage, and Bakri admitted that the damage was merely cosmetic. MSJ Br. 13–16. But this evidence is not

MEMORANDUM OPINION AND ORDER – PAGE 7

dispositive. First, a reasonable jury may interpret Bakri's deposition testimony as a general agreement that a metal roof could be in working condition despite hail damage; it is not clear that he was referring to the specific damage on his roofs. *See* Dep. of Mohamad Bakri, 50:4–10 [11-1]. Second, Bakri provides additional evidence that the damage was not merely cosmetic. Hall's expert report found that "impacting hail buckled the lap seams creating openings for the passage of rain water thus preventing the roof from 'continuing to function as a barrier to the entrance of elements.'" Pl.'s App. Supp. Mot. Summ. J. 12. This report raises a genuine issue of fact as to whether the hail damage impacted the function of the roof and was therefore covered under the policy. Accordingly, the Court denies summary judgment on the breach of contract claim.[4]

## VI. THE COURT GRANTS IN PART AND DENIES IN PART THE MOTION FOR SUMMARY JUDGMENT ON THE CHAPTER 541 CLAIMS

Chapter 541 of the Texas Insurance Code "identifies several categories of unfair settlement practices." *Admiral Ins. Co. v. Petron Energy, Inc.*, 1 F. Supp. 3d 501, 503 (N.D. Tex. 2014). Nautilus argues that Bakri lacks evidence for each of his claims, and that Bakri made statements in his deposition that preclude liability. MSJ Br. 6–9, 20. The Court agrees in part and addresses each claim in turn.

### A. The Court Grants Summary Judgment on the Section 541.060(a)(1) Claim

Nautilus is entitled to judgment as a matter of law on Bakri's claim for misrepresentation under Texas Insurance Code section 541.060(a)(1). Bakri alleges that

---

[4] Nautilus argues that Bakri's extracontractual claims must fail without a showing of breach of contract. MSJ Br. 18. Because the breach of contract claim survives summary judgment, the Court will consider Bakri's extracontractual claims.

MEMORANDUM OPINION AND ORDER – PAGE 8

Nautilus made misrepresentations when it stated that the damage was not covered under the policy because it was cosmetic or occurred outside of the policy period. Pl.'s Br. Supp. Resp. Mot. Summ. J. ("Resp. Br.") 11–12. But making factual misrepresentations regarding whether damage is covered does not constitute a violation of section 541.060(a)(1). *Messersmith v. Nationwide Mut. Fire Ins. Co.*, 10 F. Supp. 3d 721, 724 (N.D. Tex. 2014) ("The misrepresentation must be about the details of a policy, not the facts giving rise to a claim for coverage."). Here, Bakri has not provided evidence that Nautilus misrepresented the scope of the policy. Accordingly, the Court grants summary judgment to Nautilus on the misrepresentation claim.

### B. The Court Denies Summary Judgment on the Section 541.060(a)(2)(A) Claim

Section 541.060(a)(2)(A) requires insurers "to attempt in good faith to effectuate a prompt, fair, and equitable settlement" of a viable claim. TEX. INS. CODE § 541.060(a)(2)(A). Nautilus argues that this claim fails because Bakri admitted in the deposition that the dispute was merely a reasonable difference between experts. MSJ Br. 16. But Bakri's testimony is not dispositive. The fact that experts reasonably disagree on the scope of coverage does not mean that Nautilus acted in good faith during the investigation.

Further, Bakri provides other evidence indicating bad faith. For example, Johnson's report notes several deficiencies in the claims process, including failing to investigate different sources of wind and hail damage during the Policy Period and not conducting a multisource investigation of causation. Pl.'s App. Supp. Resp. Mot. Summ. J. 364 [12-3]. Based on these deficiencies, Johnson opines that Nautilus used improper methods or

MEMORANDUM OPINION AND ORDER – PAGE 9

"intentionally overlooked a multitude of different covered damages, including the replacement to the roofs and the exterior damages." *Id*. He also states that a "reasonable, experienced adjuster acting in good faith and performing a reasonable investigation would have concluded that the damages occurred during the policy period, were caused by a covered cause of loss and issued prompt payment for said damages." *Id*. This export report raises a fact issue as to whether Nautilus violated section 541.060(a)(2)(A) by failing to act in good faith during the investigation. The Court thus denies summary judgment on this claim.

### C. The Court Grants Summary Judgment on the Section 541.060(a)(3) Claim

Section 541.060(a)(3) requires insurers to "provide to a policyholder a reasonable explanation of the basis in the policy in relation to the facts or applicable law." TEX. INS. CODE § 541.060(a)(3). Here, Bakri's claim fails because he admitted in his deposition that Nautilus provided an explanation for the decision, and that he merely disagreed with it. Bakri Dep. 65:24-25; 66:1-3; *Birdow v. State Farm Mutual Automobile Insurance Co.*, 2021 WL 5448973, at *7 (N.D. Tex. 2021) (noting that a challenge to the adequacy of an explanation is not sufficient to state a section 541.06(a)(3) claim). Bakri has not provided any evidence suggesting that Nautilus did not provide an explanation for its decision to deny coverage. Accordingly, the Court grants summary judgment on the Section 541.060(a)(3) claim.

### D. The Court Denies Summary Judgment on the Section 541.060(a)(7) Claim

Bakri has provided sufficient evidence showing that Nautilus failed to conduct a reasonable investigation in violation of section 541.060(a)(7). Section 541.060(a)(7)

MEMORANDUM OPINION AND ORDER – PAGE 10

prohibits insurers from "refusing to pay a claim without conducting a reasonable investigation. TEX. INS. CODE § 541.060(a)(7). Nautilus challenges this claim based on Bakri's admission in the deposition that he did not think the investigation was unreasonable. MSJ Br. 8. But Bakri's opinion as a lay person does not invalidate expert evidence. Bakri has provided an expert report that raises a fact issue as to the reasonableness of the investigation. As discussed in Section VI. B. *supra*, Johnson's report details deficiencies in the investigation, and he opines that a reasonable investigation would have reached a different conclusion. Pl.'s App. Supp. Resp. Mot. Summ. J. 364. Because there is evidence that both supports and undermines Bakri's claim under section 541.060(a)(7), the Court denies summary judgment.

### VII. THE COURT DENIES SUMMARY JUDGMENT ON THE CHAPTER 542 CLAIM

Chapter 542 of the Texas Insurance Code[5] authorizes parties to bring claims for improperly delayed payment of benefits. TEX. INS. CODE § 542.058. To succeed on a Chapter 542 claim, an insured must show that that the insurer "after receiving all items, statements, and forms reasonably requested and required under Section 542.055, delay[ed] payment of the claim." *Id*.

Here, Bakri has provided sufficient evidence to raise a fact issue regarding whether Nautilus violated Chapter 542. As discussed in Section V, *supra*, Bakri has provided evidence that his property sustained damage by a covered cause of loss during the Policy Period and that Nautilus wrongfully rejected his claim. *See* Pl.'s App. Supp. Resp. Mot.

---

[5] Codifying the Texas Prompt Payment of Claims Act.

MEMORANDUM OPINION AND ORDER – PAGE 11

Summ. J. 4–5.  Nautilus argues that Bakri's claim fails because he admitted that he was not aware of any delay to the claims process.  MSJ Br. 4–5.  But an insurer violates section 542.058 by wrongfully rejecting a claim and thereby delaying payment.  *See Admiral Ins. Co.*, 1 F. Supp. 3d at 510 ("Because Plaintiff had a duty to defend, and breached that duty, the Court necessarily concludes that Plaintiff violated the Prompt Payment of Claims Act by erroneously rejecting Defendants' requests for defense and delaying payment of fees and expenses incurred in the Oklahoma Litigation.").  Here, Nautilus did not make prompt payment because it rejected the claim.  The Court thus denies summary judgment on Bakri's Chapter 542 claim.

### VIII. THE COURT DENIES SUMMARY JUDGMENT ON THE CLAIM FOR BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

An insurer breaches its common law duty of good faith and fair dealing "by denying or delaying payment of a claim if the insurer knew or should have known it was reasonably clear the claim was covered."  *R & V Anderson Group, Inc. v. Landmark American Ins. Co.*, 2013 WL 12092115, at * 4 (W.D. Tex. 2013) (citing *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 49 (Tex. 1997)).  To succeed on this claim, an insured must show that "the insurer had no reasonable basis for denying or delaying payment of the claim."  *Trans. Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994).  Bona fide coverage disputes do not demonstrate bad faith.  *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 448 (Tex. 1997).

Bakri has provided sufficient evidence to raise a fact issue regarding whether Nautilus lacked a reasonable basis for denying his claim.  As discussed in Section V, *supra*, Hall's expert report indicates that the damage resulted from a covered cause of loss during

the Policy Period. *See* Pl.'s App. Supp. Mot. Summ. J. 12. Further, as discussed in Section VI.B, *supra*, Johnson's export report indicates that Nautilus acted in bad faith when it mishandled the claims investigation. *See* Pl.'s App. Supp. Resp. Mot. Summ. J. 364. Nautilus argues that Bakri conceded in his deposition that the dispute was merely a reasonable difference of opinion between experts. MSJ Br. 10. But this evidence does not entitle Nautilus to judgment as a matter of law. Indeed, Bakri's opinion on a legal conclusion (whether Nautilus acted in bad faith) does not negate the expert report. Because Bakri has provided other evidence to raise a fact issue regarding whether Nautilus breached the duty of good faith and fair dealing, the Court denies summary judgment.

### IX. THE COURT DENIES SUMMARY JUDGMENT ON THE DTPA CLAIM

To succeed on a DTPA claim, a plaintiff must prove that (1) he or she is a consumer; (2) the defendant engaged in false, misleading, or deceptive acts; and (3) these acts were a producing cause of the consumer's damages. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995); TEX. BUS. & COM. CODE § 17.46. In insurance cases, "an insurer will not be faced with a tort suit for challenging a claim of coverage if there was any reasonable basis for denial of that coverage." *Higginbotham v. State Farm Mut. Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997). Nautilus argues that Bakri lacks evidence showing Nautilus committed wrongful acts or that the wrongful acts caused Bakri's damages. MSJ Br. 19. Both arguments fail.

First, Bakri has produced evidence that Nautilus committed a wrongful act under the DTPA. Bakri's expert, Johnson, provides a report detailing how Nautilus mishandled Bakri's claims by failing to investigate sources of wind and hail damage during the Policy

MEMORANDUM OPINION AND ORDER – PAGE 13

Period, not thoroughly investigating causation, and misrepresenting the facts surrounding the claims. Pl.'s App. Supp. Resp. Mot. Summ. J. 348–67. Johnson also opines that these deficiencies show Nautilus's failure to act in good faith, and there was no reasonable basis to deny coverage. *Id*. at 346, 354. This evidence suggests that Nautilus engaged in false and misleading acts in violation of the DTPA.

Second, Bakri provided evidence that the misleading acts led to a denial of coverage, and ultimately, his damages. Johnson's report suggests that Nautilus wrongfully denied coverage. *Id*. at 348–67. And Kevin Funsch's export report estimates that the repairs Nautilus declined to cover cost $143,055.26. *Id*. at 208. Bakri has therefore provided evidence to raise a fact issue as to whether Nautilus engaged in misleading acts during the claims process that caused his damages. Accordingly, the Court denies summary judgment on the DTPA claim.

## Conclusion

For the reasons set forth above, the Court grants Nautilus's motion for leave and denies its motion to exclude expert testimony. Further, because Bakri has raised genuine issues of material facts, the Court denies summary judgment on his claims for breach of contract, violations of Texas Insurance Code sections 541.060(a)(2)(A) and 541.060(a)(7), violations of Texas Insurance Code Chapter 542, breach of the duty of good faith and fair dealing, and violations of the DTPA. However, the Court grants summary judgment on Bakri's claims under sections 541.060(a)(1) and 541.060(a)(3) of the Texas Insurance Code.

Signed February 7, 2023.

_____
David C. Godbey
Chief United States District Judge